**EVANS LAW FIRM, INC.**
INGRID M. EVANS (State Bar No. 179094)
3053 Fillmore St. #236
San Francisco, CA 94123
Ingrid@evanslaw.com
Tel: 415-441-8669
Fax: 888-891-4906

**GULKO SCHWED LLP**
ASHER GULKO (*pro hac vice* to be submitted)
44 Wall Street, 2nd Floor
New York, New York 10005
Asher@gulkoschwed.com
Tel: 212-500-1312
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMT DEVELOPERS, LLC & DAVID KRAMER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>CHARLES TOWLE, ISH SPENCER, RICK OWAKI, U.S. CAPITAL PARTNERS, LLC & U.S. CAPITAL GLOBAL PARTNERS, LLC ,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a)**<br>**(2) Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**<br>**(3) Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a)**<br>**(4) Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**<br>**(5) Common Law Fraudulent Inducement Against All Defendants;**<br>**(6) Common Law Fraudulent Inducement Against U.S. Capital Partners, LLC and U.S. Capital Global, LLC;**<br>**(7) Unjust Enrichment;**<br>**(8) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. Fraudulent Business Practices;** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**(9)  Violation of California's Unfair
Competition Law, Cal. Bus. & Prof.
Code §§ 17200 *et seq*. Unfair Business
Practices;**

**DEMAND FOR JURY TRIAL**

Plaintiffs CMT DEVELOPERS, LLC and DAVID KRAMER (collectively "Plaintiffs"),

on behalf of themselves individually and all others similarly situated, and based on personal

knowledge and information and belief, allege as follows:

**<u>INTRODUCTION</u>**

1.   This is a class action seeking damages, rescission, and restitution for violations of

Sections 1962(a) – (c) of the Racketeer Influenced Corrupt Organizations Act of 1970 (18 U.S.C.

§§ 1961, *et seq*.) and for violations of the California Unfair Business Practices Act (Cal. Bus. &

Prof. Code § 17200, *et seq*.), based upon the unlawful and deceptive acts of Charles Towle, Ish

Spencer, Rick Owaki, U.S. Capital Partners, LLC, and U.S. Capital Global Partners, LLC

(collectively referred to as "Defendants"), each of the individual defendants, employed and/or

otherwise affiliated with the corporate defendants.

2.   Defendants have unlawfully collected monies from Plaintiffs and a class of others

similarly situated to Plaintiffs ("Class"), through fraudulent and unlawful business practices. A

compilation of some of the past and current litigation proceedings ("Litigation Summary"),

which are almost identical to the fact pattern contained herein, are attached as **<u>Exhibit A</u>**.

3.   Defendants' elaborate and well thought out scheme has defrauded Plaintiffs and

numerous others, by making certain false representations to induce them into a certain Term

Sheet (defined below), which relying on the terms of the illegal, void and unenforceable Term

Sheet and other agreements, Defendants, amongst other things, unlawfully billed and collected

monies that they claimed to be owed to them, and/or extorted and leveraged settlements from those that are unwilling to pay their baseless demands.

**4. As evidenced just from the Litigation Summary and the details herein, this is beyond any kind of unlawful pattern by Defendants, this is Defendants' *modus operandi* and use of the law to continue to perpetrate a fraud by concealing these grievances from the public via arbitration.**

5. While it is unclear how many total "discreet" [1] or other proceedings involving any of the Defendants, including before any kind of regulatory authority[2], there is reason to believe there has been close to at least 100 legal proceedings in just the last 10 years brought or commenced by U.S. Capital (defined below) in connection to facts identical or substantially similar to the ones alleged herein. Nonetheless, Defendants have successfully manipulated the judicial system and continue to perpetrate their fraud through arbitration and other "discreet" venues, which are not accessible to the general public.

6. As a result of Defendants' marketing and sale of deceptive financial services, Plaintiffs and others similarly situated have suffered significant financial injury. Plaintiffs bring this suit on behalf of themselves and a class of others that are similarly situated, to recover monies paid to Defendants in connection with this scheme, as well as for other monetary and injunctive relief.

## JURISDICTION & VENUE

7. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this action alleges claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1961 *et seq*.

---

[1] *See* ¶ 1 of the complaint filed by counsel for U.S. Capital, the law firm of Vedder Price, P.C., against U.S. Capital, annexed hereto as **Exhibit B.**
[2] *See* media release published by the Colorado Department of Regulatory Agencies, dated 10-7-2015, annexed hereto as **Exhibit C.**

8.   Jurisdiction also is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This claim is brought as a putative class action consisting of 100 or more class members in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a state different from a defendant.

9.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as the Defendants regularly conduct business and committed the above-referenced unlawful practices within this District. This Court has supplemental subject-matter jurisdiction over any ancillary or pendent state law claims under 28 U.S.C. §1367.

### PARTIES

10. Plaintiff CMT Developers, LLC ("CMT") is an entity incorporated in the State of New Jersey.

11. Plaintiff David Kramer ("Kramer," and together with CMT Developers, LLC are referred to collectively as "Plaintiffs") is an individual who maintains a residence in Kings County, New York.

12. On information and belief, Defendant US Capital Global Partners, LLC ("USCG," and together with "U.S. Capital Partners, LLC" are collectively referred to as "U.S. Capital" and/or "Corporate Defendants") is an entity incorporated in the State of Delaware. USCG's address for service of process is 555 Montgomery Street, Suite 1501, San Francisco, California 94111.

13. On information and belief, Defendant US Capital Partners, LLC ("USCP," and together with "U.S. Capital Global Partners, LLC" are collectively referred to as "U.S. Capital" and/or "Corporate Defendants") is an entity incorporated in the State of Delaware. USCP's address for service of process is 555 Montgomery Street, Suite 1501, San Francisco, California 94111.

14. On information and belief, defendant Charles Towle is an individual who resides in the State of California and is, and was at all relevant times herein, an officer and/or director of defendants U.S. Capital Partners, LLC and U.S. Capital Global Partners, LLC.

15. On information and belief, defendant Ish Spencer is an individual who resides in the State of California and is, and was at all relevant times herein, an officer and/or director of defendants U.S. Capital Partners, LLC and U.S. Capital Global Partners, LLC.

16. On information and belief, defendant Rick Owaki, is an individual who resides in the State of California and is, and was at all relevant times herein, an officer and/or director of defendants U.S. Capital Partners, LLC and U.S. Capital Global Partners, LLC.

## FACTUAL BACKGROUND

17. As detailed more fully herein, Defendants preyed on the general public and took advantage of their trust and reliance on Defendants' misrepresentations to induce them to enter into certain agreements, which Defendants never had any intention to perform under.

18. Defendants promotes itself to the public as a private investment bank that acts as a direct lender, makes direct debt investments, participates in debt facilities, and arranges equity placements for small and lower middle market companies.

19. Plaintiff is a real estate investor and developer.

20. In August 2019, Plaintiff sought financing in the amount of approximately $55,000,000 to be used in connection with the demolition and development of a 240-unit, multi-family, mixed use project ("Transaction"), located at the site of a former hospital in Elizabeth, New Jersey ("Property").

21. Plaintiff contacted Ms. Valerie Hapner ("Hapner"), a commercial loan officer with Forbix Financial Group located in Los Angeles, California to help arrange financing for the Transaction.

22. Hapner introduced Plaintiffs to U.S. Capital, whom Plaintiffs and Hapner understood to be a direct lender.

23. Defendants, and specifically Spencer consistently represented to Plaintiff on telephone calls as well as in writing that USCG was a direct lender would act as a direct lender in this transaction.

24. Thus, Plaintiff in one of the first conversations with defendants, Hapner, U.S. Capital and Spencer, amongst others in or around the end of July 2019, Plaintiff specifically asked Spencer if U.S. Capital was a broker or direct lender.

25.  In response, Spencer represented that U.S. Capital was only a direct lender.

26. On or about August 2, 2019, Defendants delivered to Plaintiff through internet e-mail transmission, a "Term Sheet for Proposed Credit Facility" dated August 6, 2019 (hereinafter referred to as "Term Sheet").

27. The Term Sheet states:

> "U.S. Capital Global Partners, LLC ("USCP") is pleased to be able to provide CMT Developers LLC, Inc. (the "Company"), a proposal for a credit facility of up to $55,000,000 (the "Proposed Credit Facility"), conditional upon the terms summarized in this letter."

28. The Term Sheet made clear that U.S. Capital was the lender, and would be the one to conduct certain due diligence, issue a commitment and loan documents.

29. According to the Term Sheet, the provision of the loan was contingent upon, among other things, U.S. Capital's completion of a due diligence investigation of Plaintiffs the members of the Class and execution of a separate "exclusive fee agreement" for U.S. Capital.

30. The Term Sheet also required Plaintiffs to pay a due diligence fee ("Due Diligence Fee") by wire transfer of $50,000.00 to U.S. Capital before it would engage in any due diligence activity relating to the loan. The Term Sheet also made clear that the fee was paid "in

consideration of [U.S. Capital's] work of investigating and reviewing the Proposed Credit

Facility".

31. Defendant Towle signed and executed the Term Sheet on behalf of U.S. Capital.

32. Defendants Towle, Spencer and U.S. Capital, however, knew at the time the Term Sheet

was provided to Plaintiffs [and the Class] and all times thereafter, that they would not conduct a

due diligence investigation of Plaintiffs or any member of the Class in good faith, if at all; that

they would not investigate and review the Proposed Credit Facility in good faith; that U.S.

Capital would not offer any direct loan to Plaintiffs; and, that they would not locate any affiliate

or assignee willing to offer Plaintiffs a loan substantially along the lines of the loan proposed in

the Term Sheet.

33. With this knowledge, U.S. Capital took the $50,000.00 Due Diligence Fee from Plaintiffs

with no intention of providing any consideration in return for such or ever returning any portion

of such to Plaintiffs.

34. After Plaintiffs executed the Term Sheet and prior to Agreement being executed, various

representatives of U.S. Capital, including defendants Owaki and Spencer, engaged

representatives for Plaintiffs via telephone and e-mail communications and advised Plaintiffs that

upon the satisfaction of a reasonable due diligence investigation of Plaintiffs, U.S. Capital would

provide a loan to Plaintiffs.

35. Plaintiffs and the Class continued to believe that U.S. Capital was a direct lender and had

the ability to move quickly and close, and as such relied upon representations to their detriment.

36. Plaintiffs and the Class continued to rely upon these material misrepresentations and/or

omissions to their detriment.

37. For example, in early August of 2019, defendant Ish Spencer, further advised Plaintiffs

by e-mail as follows:

> "Upon your approval and execution of our Term Sheet, we will collect our Due Diligence and Underwriting Fee to complete the gathering and verification of the data that you provided. After execution of the Term Sheet, and at the end of this diligence process, we will issue a Commitment Letter or go directly to loan documents."

38. During this time, Plaintiffs provided Defendants with a significant amount of proprietary information including tax return, financial projections and monthly budgets. As a result, Defendants had intimate knowledge of Plaintiffs' assets and financial condition, which enabled them to execute their fraudulent scheme with precision and target Plaintiffs with a demand based upon the knowledge they were privy to.

39. On or about September 4, 2019, U.S. Capital delivered via e-mail to CMT offices in Kings County, New York a certain fee agreement ("Fee Agreement"), previously signed by Towle on behalf of U.S. Capital.

40. The Fee Agreement provided by U.S. Capital is a 3-page document typed in single spaced, fine print. The Fee Agreement appears to supplement and not contradict the previously executed Term Sheet.

41. Within the Fee Agreement, U.S. Capital represented that it: (1) was engaged by CMT "to provide the services set out in the schedules ("the "Services"); (2) that "as remuneration for the services, CMT shall pay U.S. Capital additional, multiple fees, including "break- up fees", "set out in the schedules"; and, (3) that U.S. Capital "shall devote such time and diligent efforts as may reasonably be necessary to perform the Services

42. However, the "schedules" which identify the actual "Services" to be performed by U.S. Capital pursuant to the Fee Agreement reveal that U.S. Capital was not obligated to perform any new act or omission at all in consideration for the multiple, additional fees to be charged to Plaintiffs.

43. At the time Towle and U.S. Capital presented the Fee Agreement to Plaintiffs they were aware that neither intended to perform any act or omission to provide any loan to Plaintiffs; that neither intended to perform a good faith due diligence, or any other, investigation of Plaintiffs; and that no affiliate or assign of U.S. Capital would provide a loan to Plaintiffs substantially along the lines of the terms identified in the existing Term Sheet.

44. In accordance with their pattern of deceptive trade practices, on or about September 23, 2019, Spencer sent Plaintiffs a proposed term sheet from a different lender, named Tioga Capital, LLC.

45. However, just prior to sending the proposed term sheet from Tioga Capital, LLC, on September 18, 2019, Spencer sent an e-mail to Plaintiffs wherein he stated that he had an offer from a "lending partner".

46. Notably, the terms reflected in the foregoing e-mail omitted from its terms any mention of further deposits or due diligence costs.

47. The terms contained in the proposed term sheet from Tioga Capital, LLC were not substantially similar to the terms identified within the Term Sheet, insofar that it provided for payment of multiple, additional fees by Plaintiffs, a smaller overall loan, higher interest rates charged, and tighter concentration limits and access to funding.

48. Plaintiffs immediately responded by e-mail stating his objections to certain terms, and specifically, a proposal to move forward, which included closing on the original terms and timeframe outlined in the Term Sheet.

49. Defendants were aware that Plaintiffs would not accept the terms contained in anything other than the original terms memorialized in the Term Sheet.

50. Defendants however, had no intent on performing as required under the provisions of the Term Sheet with CMT, and instead were intent on avoiding CMT's detection that they (1) never

intended to conduct a due diligence investigation of CMT in good faith; (2) never intended to investigate and review the Proposed Credit Facility; (3) never intended to offer any direct loan to Plaintiffs; and, (4) never intended to locate any affiliate or assignee willing to offer to Plaintiffs any loan substantially along the lines of the loan proposed in the Term Sheet.

51. Defendants, via the telephone or internet across state lines, engaged in the following unlawful plan, scheme and enterprise:

(a) U.S. Capital would assign its interest in the CMT's proposed loan facility to Tioga Capital, LLC or other lender without disclosing the assignment of the loan to CMT;

(b) U.S. Capital would then convince CMT to sign a new Term Sheet which would change the terms to include a loan proposal which would arguably be "substantially along the lines" of a loan which Tioga Capital, LLC would subsequently offer to CMT;

(c) After U.S. Capital convinced CMT to execute the new Term Sheet, it would advise CMT of the assignment to Tioga Capital, LLC and Tioga Capital, LLC would present to CMT its own separate version of a term sheet which would obligate CMT to pay additional fees to Tioga Capital, LLC, including fees for another due diligence investigation;

(d) Having assigned the loan proposal identified in the new Term Sheet to Tioga Capital, LLC, U.S. Capital would relieve itself of any fear that its true, undisclosed intentions would be detected by CMT; and,

(e) As long as Tioga Capital, LLC offered to CMT a loan which was "substantially along the lines" of the new Term Sheet, both U.S. Capital would remain entitled

to receipt of the various fees chargeable to or already paid by CMT, in spite of their knowledge that CMT would not accept such terms.

52. On or around September 23, 2019, Tioga Capital, LLC delivered to U.S. Capital, via the internet across state lines, a copy of a written loan proposal ("Tioga Proposal") addressed to Ish Spencer and U.S. Capital, dated September 23, 2019.

53. The Tioga Proposal is materially different than, and not substantially along the lines of, the terms of the loan proposed within the original Term Sheet, such as it: substantially increased the collateral and security requirements of CMT in order to secure any loan; reduced the personal guarantee to a limited personal guarantee; substantially restricted the eligibility of any loan advance; doubled the "loan facility fee" from 1% to 2%; and increased the maximum interest rates charged to Plaintiff.

54. Thereafter, on or about October 9, 2019, U.S. Capital delivered via e-mail to Hapner a "Commitment Letter for Proposed Credit Facility" ("Commitment").

55. The Commitment informed CMT that U.S. Capital was pleased to advise that it had "completed its due diligence and underwriting" on CMT but had assigned the Term Sheet of August 6, 2019, to its "Assignee".

56. U.S. Capital never performed any due diligence.

57. U.S. Capital attached to the Commitment delivered to CMT another term sheet, which again, notably, required an additional $50,000.00 "commitment fee" by CMT.

58. The purported purpose of the "commitment fee" is synonymous with the purported due diligence investigation which U.S. Capital contractually agreed to perform for CMT and charged CMT a total of $85,000.00 in due diligence Fees.

59. Further, U.S. Capital's commitment letter which informed CMT of the assignment of its interest in the CMT's loan facility also advised that U.S. Capital's due diligence and underwriting for CMT had been completed.

60. Simultaneous with the Commitment, U.S. Capital submitted an amendment to the Agreement ("Amendment"), which sought to extend the term of the Agreement by an additional thirty (30) days.

61. Plaintiff refused to sign the Amendment, as Defendants had failed to perform whatsoever under the Agreement and it was clear to Plaintiff that Defendants had misrepresented their role and capabilities and could not deliver in accordance with the Term Sheet.

*Recent Developments and Proceedings*

62. In accordance with U.S. Capital's past practices and pattern and in furtherance of the unlawful enterprise, on or about December 23, 2019, Plaintiffs received a letter from counsel for U.S. Capital, demanding a payment of $35,000 as part of their due diligence fee, as well as a demand for payment of $1,100,000 as a "minimum banking fee," and $250,000 as a "break-up fee".

63. Counsel for Defendants made immediate attempts to settle, however, as settlement started to become less of a reality, counsel for Defendants demanded time and time again, that under no circumstances were we allowed to pursue any remedy outside of a private and confidential venue for dispute resolution.

64.  It became more apparent that Defendants had engaged in this scheme to defraud Plaintiffs and others, and using the proprietary information provided to them in due diligence, developed a precise approach to their fraudulent tactics.

**65. Moreover, it became abundantly clear during settlement discussions that Defendants would seek to further perpetrate their fraudulent scheme without creating any**

**further public record by keeping this matter contained, as it had with others, by forcing arbitration.**

66. On or about January 24, 2020, Plaintiff filed an action in the Supreme Court for New York County ("State Action"), based on three separate counts: (i) fraud in the inducement, (ii) Declaratory Judgment, and (iii) conversion.

67. Defendants immediately sought to seal the action; however, without having any basis for sealing the action, Defendants were unsuccessful in keeping this matter closed to the public.

68. Thereafter, U.S. Capital removed the case to federal court for the Southern District of New York ("Federal Action"), and sought to dismiss the complaint, based on provisions of the Fee Agreement.

69. By way of stipulation, the parties agreed to stay the Federal Action pending mediation and *any* subsequent arbitration.

70. Despite attempts by Plaintiffs to initiate mediation, and in blatant breach of the stipulation filed with the court in the Federal Action, counsel for U.S. Capital refused to mediate and has insisted that the parties proceed to arbitration.

71. Notwithstanding Plaintiffs' position with respect to the enforceability of the Fee Agreement, Defendants, pursuant to that certain Fee Agreement, initiated arbitration proceedings before JAMs located in San Francisco, California ("Arbitration").

72. At all times relevant herein, Plaintiffs have made clear that they do not consent to jurisdiction for purposes of the Arbitration, and JAMs has acknowledged Plaintiffs' concerns and agreed to not subject Plaintiffs to jurisdiction before JAMs until the issue has been resolved.

73. Plaintiffs intend to seek an immediate injunction to stay the Arbitration, at least pending the Court's determination on the application submitted in connection therewith.

74. The multitude of litigations, based on almost identical agreements, and existence of a number of "discreet" proceedings, both past and present, which appear to contain similar, and in some instances, identical fact patterns, as articulated herein, will result in fraud to be perpetuated and continue to be perpetuated, as Defendants have successfully kept any disputes out of the public eye or otherwise available via arbitration clauses that are unlawful and based on fraud.

75. After spending further time investigating U.S. Capital, Plaintiffs discovered:

(a) There have been numerous litigations filed in just the last ten (10) years against U.S. Capital based on identical claims, patterns and fraudulent activities (*see* Compilation of Litigations annexed hereto as **Exhibit A);**

(b) U.S. Capital, together with its current and former principals, have been embroiled in numerous lawsuits involving fraud and deceptive trade practices, including regulatory proceedings that resulted in significant sanctions and a judgment in excess of Ten Million Dollars ($10,000,000) (*see* media release published by the Colorado Department of Regulatory Agencies, dated 10-7-2015, annexed hereto as **Exhibit C);** and

(c) There are a significant number of "discreet" or non-public legal proceedings, which are presumed to be the more recent legal proceedings (*see* ¶ 1 of the complaint filed by counsel for U.S. Capital, the law firm of Vedder Price, P.C., against U.S. Capital, annexed hereto as **Exhibit B).**

76. As a result, Plaintiffs have initiated this action in an effort to put an end to Defendants fraudulent practices, including the current fraud being perpetuated against Plaintiffs and others similarly situated.

## ALLEGATIONS COMMON TO ALL COUNTS BASED UPON THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

77. It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. §1962 (c).

78. Each occasion whereby U.S. Capital utilized the internet to communicate and transmit to Plaintiffs via e-mail the following, amongst a plethora of other things: (i) the Term Sheet, (ii) Fee Agreement, (iii) documents describing the details of the purported Due Diligence investigation to be conducted by U.S. Capital; (iv) the September 23, 2019 Term Sheet, (v) the October 9, 2019 Commitment; and, (vi) the Demand and Statement of Claim, constitute separate acts of wire fraud, indictable under 18 U.S.C.§ 1348.

79. Each occasion where U.S. Capital communicated to Plaintiffs via e- mail and the telephone the representations, inducements and promises and intentionally withheld material information which if known to Plaintiffs, would have caused Plaintiffs to refrain from entering into and executing the (1) Term Sheet; and (2) Fee Agreement, constitute separate acts of wire fraud, indictable under 18 U.S.C. 1348.

80. U.S. Capital utilized the internet to transmit and deliver the documents, communications and information identified above from California to New York and New Jersey for the purpose of intentionally and knowingly using interstate commerce in furtherance of an enterprise to defraud Plaintiffs.

81. The representations and omissions by U.S. Capital were material for each of the agreements; U.S. Capital knew at the time that it made each of the material misrepresentations of fact and intentional omissions of fact that they were necessary to induce CMT into signing and

executing each agreement; CMT in fact did sign and execute each agreement in reliance upon the misrepresentations made and omissions withheld by U.S. Capital, and thereby paid to U.S Capital the fees identified throughout the Complaint; expended valuable time and resources in pursuit of the perceived U.S. Capital funding opportunities, and refrained from pursuing other legitimate opportunities to satisfy its funding needs.

82. As a direct and proximate result of the fraudulent scheme and enterprise engaged in and committed by U.S. Capital, Plaintiffs and others similarly situated, have been damaged by the loss of legitimate funding opportunities and the consequential; the loss of time, effort and resources of Plaintiffs' personnel spent pursuing the perceived U.S. Capital funding opportunities; as well as the out of pocket fees paid to U.S. Capital.

83. Through the intentional commission of the overt acts and omissions detailed herein by U.S. Capital, including but not limited to those described in this Complaint, U.S. Capital and the individual defendants, took action in furtherance of, the creation of an unlawful enterprise to commit at least two (2) predicate acts which form a pattern of racketeering activity to defraud CMT out of monies, and in violation of sub-sections (a), (b) and (c) of 18 U.S.C. §1962.

84. The acts and omissions of U.S. Capital also have the intended effect of projecting into the future and threaten further damage to Plaintiffs and others similarly situated, as CMT will continue to experience the slander to its business and lost business opportunities as a direct result of such acts and omissions, until and unless relief for such is provided by this Court.

85. Moreover, Plaintiffs can never recoup the business opportunities already lost as a result of the unlawful enterprise of U.S. Capital. Further, the agreements, documentation, and processes utilized by U.S. Capital in this action are "form' agreements and standard operating procedures, obviously prepared and implemented for the purpose of furthering the pattern of racketeering

activity with its assignees as described herein for any and all businesses similarly situated to

Plaintiffs who present themselves to U.S. Capital in the future.

## CLASS ALLEGATIONS

86. Plaintiffs bring this action, on behalf of themselves and the Class, as a class action under

Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

87. Plaintiffs define the Class as follows:

> All persons or entities who engaged U.S. Capital to act as a direct
> lender and entered into certain fee agreements with U.S Capital to
> procure real estate or other financing.

88. Excluded from the Class are (1) any Judge or Magistrate presiding over the class action

and members of their families; (2) Defendants and their subsidiaries, parents, successors,

predecessors, or any entity in which Defendants have a controlling interest; (3) persons who

properly execute and file a timely request for exclusion from the class; and (4) the legal

representatives, successors, or assigns of such excluded persons. Plaintiffs believe that amending

the class definition may be required upon class discovery.

89. The number of persons who are members of the Class are so numerous that joinder of all

members in one action is impracticable. Between public records and submissions by counsel for

U.S. Capital, such as the law firm of Vedder Price, P.C., the Class is reasonably estimated to

include at least one hundred participants. While the precise number, names, and addresses of all

members of the Class are unknown to Plaintiffs at this time, such information is ascertainable

from analysis of Defendants' records.

90. The claims of Plaintiffs and the Class have a common origin and share a common basis.

All Class members suffered from the same misconduct described herein, and they all suffered the

same injury and lost money or property because of Defendants' systematic misconduct. There

are common questions of fact and law, which exist and which are susceptible to common answers as to each Class member. These questions include, but are not limited to the following:

(a) Whether Defendants made certain fraudulent representations to Plaintiff and the Class to induce them to enter into certain fee agreements and/or term sheets;

(b) Whether Defendants knew that representations made to Plaintiffs and the Class were false and made to induce them to enter into certain agreements;

(c) Whether the Defendants aided and abetted fraud;

(d) Whether U.S. Capital, by and through its agents and/or employees, knew of and/or willfully disregarded that fraud;

(e) Whether Defendants made untrue statements to Plaintiffs and the Class negligently and without any reasonable grounds for believing them to be true;

(f) Whether Defendants engaged in deceptive conduct by making misrepresentations and omissions to Plaintiffs and the Class;

(g) Whether Defendants engaged in deceptive conduct relating to the sale and marketing of certain financial services;

(h) Whether Defendants deceptive conduct impacted the consumer public at large;

(i) Whether the U.S. Capital enterprise constitutes an "associated-in-fact enterprise" within the meaning of RICO;

(j) Whether Defendants' conducted the affairs of the enterprise within the meaning of RICO; and

(k) Whether Defendants were, and are, unjustly retaining the payments they have received at the expense of Plaintiffs and members of the Class.

91. Plaintiffs' claims are typical of the claims of the Class, and arise from the same course of conduct undertaken by Defendants against the Class as a whole. There are no conflicts between

the interests of the named Plaintiffs and the interests of the members of the Class. The relief

Plaintiffs are seeking is typical of the relief sought for the members of the Class, namely,

rescission of certain fee agreements and damages for monies paid or billed pursuant to such

agreements.

92. Plaintiffs will fairly and adequately represent and protect the interests of the Class

because of the common injury and interests of the members of the Class and the uniform conduct

of Defendants that is, and was, applicable to all members of the Class. Plaintiffs have retained

counsel competent and experienced in class action litigation that will adequately represent and

protect the interests of the members of the Class

93. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only

because common questions of fact and law predominate, but also because a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy. The

prosecution of separate actions by individual members of the Class would impose heavy burdens

upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications

of the questions of law and fact common to the Class. A class action, on the other hand, would

achieve substantial economies of time, effort and expense, and would assure uniformity of

decision as to persons similarly situated without sacrificing procedural fairness or bringing about

other undesirable results. Plaintiffs are aware of litigation commenced over the controversies

related to those alleged herein, which could create the risks of inconsistent and varying

adjudications referenced above.

94. Plaintiffs are not aware of any management difficulties which should preclude

maintenance of this litigation as a class action. Plaintiffs do not anticipate any difficulty in the

management of this action as a class action. Only one state's law, California, applies to the non-

federal claims in this action. Rule 23 provides the Court with authority and flexibility to

maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into further subclasses.

95. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) with respect to injunctive relief. Injunctive relief is required for Plaintiffs and members of the Class to the extent that they seek to have certain agreements rescinded and all terms thereof declared void. Absent this, money damages and/or statutory penalties alone are insufficient to redress the irreparable harm. Injunctive relief is also required because Defendants have acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

96. Based on the financial toll experienced by Plaintiffs as a result of Defendants' wrongful acts, Plaintiffs believe the amount in controversy well exceeds $5 million for the Class. All members of the Class have been subjected to and required to execute the agreements made subject herein. As such, there are questions of law and fact that are common to the class and that are subject to common proof.

**COUNT I:**
**CIVIL VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. § 1962(a)**
**-Against Individual Defendants-**

97. Plaintiffs hereby adopts each and every allegation in paragraphs 1 through 96 as if fully re-alleged herein.

98. It shall be a violation for any person to receive income, directly or indirectly, from a pattern of racketeering activity. 18 U.S.C. §1962 (a).

99. Defendant U.S. Capital constitutes an ongoing organization, with an ascertainable purpose beyond the predicate acts and the conspiracy to commits such acts, by which the enterprise functions as a continuing unit comprised of Defendants.

100.    The individual defendants conducted or participated in the conduct of U.S. Capital enterprise's affairs through a pattern of racketeering activity consisting of, inter alia, more than two acts of mail fraud and wire fraud, (in violation of 18 U.S.C. §§ 1341 and 1343). As part of this pattern, continuing over the course of years, by using the mails, private interstate carriers and interstate wire communications, the Individual Defendants, through the U.S. Capital enterprise, fraudulently induced and extorted potentially hundreds, if not more, persons including Plaintiffs.

101.    In particular, without limitation, in violation of 18 U.S.C. §§ 1341 and 1343, the U.S. Capital enterprise employed the Postal Service and/or private or commercial interstate carriers and/or interstate wire communications to send their materially false and misleading marketing materials policies to Plaintiffs, Class members, and others (including brokers), and to receive from Plaintiffs and Class members payments of Defendants' fees and premiums, all as set forth above.

102.    On information and belief, the U.S. Capital enterprise functioned as a continuing unit and had a decision-making structure by which the participants formulated and decided how to promote, implement and conceal the illegal nature of its fraudulent business practices.

103.    Each defendant's conduct as set forth herein was in concert with each of the other Defendant's conduct, and planned and arranged with and known by each of the other said Defendants pursuant to said Defendants' common scheme to sell and conceal their unlawful and fraudulent business practices. The Defendants agreed to facilitate the operation of an enterprise through a pattern of racketeering activity and agreed to commit predicate acts.

104.    Defendants' conduct of the U.S. Capital enterprise and their pattern of racketeering activity commenced in the early to mid-2000's, well before when they first contacted Plaintiffs to solicit them in their scheme, and continues through the present, when the Defendants continue to communicate with Plaintiffs and Class members, using interstate mail and wire facilities, but not to reveal and in fact conceal or contest the full extent of said Defendants' racketeering conduct.

105.    Due to Defendants' unlawful conduct in promoting, facilitating, misrepresenting and concealing the business purpose of the U.S. Capital enterprise, Plaintiffs and Class members would not have entered into the any transaction with Defendants, and would not have millions of dollars in fees and/or charges, to or by Defendants.

106.    As a direct and proximate result of the foregoing conduct by Defendants, Plaintiffs and the Class have been damaged in the amount of the millions of dollars; the loss of use of funds (including interest thereon); and such other damages as Plaintiffs and the Class have sustained and will continue to sustain in an amount to be determined at trial. Plaintiffs, Class members, and the public are threatened with loss and injury and/or irreparable harm due to Defendants' violation of the RICO laws.

107.    As a proximate cause of the foregoing, Plaintiffs and the Class have been injured in the manner described above, with the amount to be according to proof, said amount to be trebled and awarded against the Defendants, jointly and severally, plus attorneys' fees and costs.

108.    As a direct, consequential and intended result of the pattern of racketeering activity alleged throughout this Complaint, U.S. Capital took possession of and has retained monies from Plaintiffs and the Class in the form of a "Due Diligence Fee".

109.    The pattern of racketeering activity committed by U.S. Capital as alleged throughout this Complaint occurred as the result of the planning, direction and control of the individual defendants named herein: Towle, Owaki and Spencer.

110.    As Managing Director(s) and/or Partners of U.S. Capital at all times relevant, defendants Towle, Owaki and Spencer, received income directly from U.S. Capital, which was derived directly or indirectly from the pattern of racketeering activity alleged throughout this Complaint.

WHEREFORE, the Plaintiffs respectfully requests this Court to enter judgment against defendants Towle, Owaki and Spencer, as to this Count I Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S. Section 1962(a) and award all legal and equitable relief to Plaintiffs which it is entitled to as a matter of law and equity, including but not limited to treble damages.

**COUNT II:**
**CIVIL VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. § 1962 (c)**
**-Against Individual Defendants-**

111.    Plaintiffs hereby adopt each and every allegation in paragraphs 1 through 110 as if fully re-alleged herein.

112.    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. §1962 (c).

113.    At all times relevant, the individual defendants possessed and exercised managerial or operational control over the enterprise of U.S. Capital to conduct the acts and omissions described throughout this Complaint in furtherance of a pattern of racketing activity.

114.     The Individual Defendants employed, or caused others under their respective direction and control to employ, the internet and telephone to communicate and transmit documents and information across state lines in furtherance of the enterprise, and therefore affected interest commerce.

WHEREFORE, Plaintiffs respectfully request that this Court to enter judgment against the Individual Defendants as to this Count II Civil Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S. Section 1962 (c) and award all legal and equitable relief to Plaintiffs which they are entitled to as a matter of law and equity, including but not limited to treble damages.

## COUNT III

### CIVIL VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1962 (a)
### -Against U.S. Capital Partners, LLC and U.S. Global Partners, LLC-

115.     Plaintiffs hereby adopt each and every allegation in paragraphs 1 through 114 as if fully re-alleged herein.

116.     It shall be a violation for any person to receive income, directly or indirectly, from a pattern of racketeering activity. 18 U.S.C. §1962 (a).

117.     As a direct, consequential and intended result of the pattern of racketeering activity alleged throughout this Complaint, U.S. Capital took possession of and has retained monies from Plaintiffs and the Class in the form of a "Due Diligence Fee".

118.     The pattern of racketeering activity committed by U.S. Capital as alleged throughout this Complaint occurred as the result of the planning, and at the direction and control of the individual defendants.

119.     U.S. Capital received income directly or indirectly from the pattern of racketeering activity alleged throughout this Complaint.

WHEREFORE, Plaintiffs respectfully requests this Court to enter judgment against U.S. Capital as to this Count III Civil Violation Of The Racketeer Influenced And Corrupt Organizations Act, 18 U.S. Section 1962 (a) and award all legal and equitable relief to Plaintiffs which it is entitled to as a matter of law and equity, including but not limited to treble damages.

**COUNT IV:**
**CIVIL VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)**
**-Against U.S. Capital Partners, LLC and U.S. Capital Global, LLC –**

120.    Plaintiffs hereby adopt each and every allegation in paragraphs 1 through 119 as if fully re-alleged herein.

121.    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. §1962 (c).

122.    At all times relevant, U.S. Capital possessed and exercised managerial or operational control over the enterprise of U.S. Capital to conduct the acts and omissions described throughout this Complaint in furtherance of a pattern of racketing activity.

123.    U.S. Capital employed the internet and telephone to communicate and transmit documents and information across state lines in furtherance of the unlawful enterprise, and therefore affected interest commerce.

WHEREFORE, the Plaintiffs respectfully requests this Court to enter judgment against Defendant U.S. Capital as to this Count IV Civil Violation Of The Racketeer Influenced And Corrupt Organizations Act, 18 U.S. Section 1962(c) and award all legal and equitable relief to Plaintiffs which it is entitled to as a matter of law and equity, including but not limited to treble damages.

**COUNT V:**
**COMMON LAW FRAUDULENT INDUCEMENT**
**-Against All Defendants-**

124.     Plaintiffs hereby adopt each and every allegation in paragraph 1 through 123 as if fully re-alleged herein.

125.     Each of the individual defendants were employed as officers and/or directors of U.S. Capital.

126.     Officers and directors of a limited liability company are individually liable for the intentional torts they conduct, such as fraudulent inducement, even if the acts and omissions which constitute the tort are committed within the course and scope of their employment.

127.     Defendants intentionally made, or caused to be made, the material misrepresentations of fact to Plaintiffs and the Class as detailed throughout this Complaint, knowing said representations were false.

128.     Defendants withheld or caused to be withheld, the material facts from Plaintiffs a as detailed throughout this Complaint, knowing those representations, if accurately conveyed to Plaintiffs were material to Plaintiffs' decision whether to engage further and enter into certain agreements, such as a Term Sheet and Fee Agreement.

129.     Defendants made, or caused others to make the material misrepresentations of fact, and withheld the statements of fact, with the intent and for the purpose of, inducing Plaintiffs and the Class to rely upon such in considering whether to enter into agreements, including a Term Sheet, and Fee Agreement.

130.     Plaintiffs and the Class in fact reasonably relied upon the misrepresentations made and facts withheld in deciding to enter into the agreements described in this Count. Had Plaintiffs been informed of all accurate, material facts and the false representations not been

1    made by Defendants, Plaintiffs would not have entered into any of the agreements with U.S.

2    Capital.

3        131.    As a direct and proximate result of Plaintiffs' and the Class's reliance on the

4    misrepresentations made and facts withheld by the individual defendants, Plaintiffs and the Class

5    have been damaged.

6        WHEREFORE, the Plaintiffs respectfully requests this Court to enter judgment against

7    Defendants as to this Count V for Fraudulent Inducement and award all legal and equitable relief

8    to Plaintiff and the Class which they are entitled to as a matter of law and equity, including but

9
10   not limited to rescission of all agreements and restitution.

11                                  **COUNT VI:**
                          **COMMON LAW FRAUDULENT INDUCEMENT**
12                **-Against U.S. Capital Partners, LLC and U.S. Capital Global, LLC-**

13

14       132.    Plaintiffs hereby adopt each and every allegation in paragraph 1 through 131 as if

15   full re-alleged herein.

16       133.    U.S. Capital intentionally made the material misrepresentations of fact to

17   Plaintiffs and the Class throughout this Complaint, knowing they were false.

18
19       134.    U.S. Capital intentionally withheld the material facts from Plaintiffs and the Class

20   detailed throughout this Complaint, knowing those representations, if accurately conveyed to

21   Plaintiffs and the Class were important to make a decision whether to enter into the certain

22   agreements, such as the Term Sheet and Fee Agreement.

23       135.    U.S. Capital made the material misrepresentations of fact and withheld the

24   material facts with the intent and for the purpose of inducing Plaintiffs and the Class to rely upon

25   such in considering whether to enter into certain agreements.

26

27

136.    Plaintiffs and the Class in fact reasonably relied upon the misrepresentations made and facts withheld in deciding to enter into the agreements described in this Count. Had Plaintiffs been informed of all accurate, material facts and the false representations not been made by U.S. Capital, Plaintiffs and the Class would not have entered into any of the agreements with US. Capital.

137.    As a direct and proximate result of Plaintiffs' reliance on the representations made and those withheld by U.S. Capital, Plaintiffs and others similarly situated, have been damaged.

WHEREFORE, the Plaintiffs and the Class, respectfully requests this Court to enter judgment against the U.S. Capital as to this Count VI for Fraudulent Inducement and award all legal and equitable relief to Plaintiffs and the Class, to which they are entitled to as a matter of law and equity, including but not limited to rescission of all agreements and restitution.

### COUNT VII:
### UNJUST ENRICHMENT
### -Against All Defendants-

138.    Plaintiffs hereby adopt each and every allegation in paragraph 1 through 137 as if full re-alleged herein.

139.    Plaintiffs and the Class provided U.S. Capital with a due diligence fee.

140.    U.S. Capital acknowledged, accepted and benefitted from each of the fee payments by Plaintiffs and the Class.

141.    Under the circumstances alleged throughout this Complaint, it would be in inequitable and unconscionable to allow U.S. Capital to retain the benefit of the fee payments by Plaintiffs and others similarly situated, and thereby unjustly enrich itself.

WHEREFORE Plaintiffs and the Class, respectfully requests this Court to enter judgment on its behalf against U.S. CAPITAL as to this Count VII for Unjust Enrichment, and award all legal

1    and equitable relief to Plaintiffs and the Class which they are entitled to as a matter of law and

2    equity.

3                                          **COUNT VIII:**

4                  **Violation of California's Unfair Competition Law California**
                        **Business &Professions Code §§ 17200 et seq.**
5                                  **Fraudulent Business Practices**
                                       **-Against All Defendants-**
6

7           142.    Plaintiffs hereby adopt each and every allegation in paragraph 1 through 141 as if
8
      full re-alleged herein.
9
            143.    Cal. Bus. & Prof. Code § 17200 et seq. prohibits any unlawful, unfair or
10
11    fraudulent business act or practice.

12          144.    Defendants' acts and practices, as alleged herein, are fraudulent business acts and
13
      practices under the UCL.
14
            145.    Defendants' conduct is fraudulent because Defendant made false and misleading
15
16    statements to California consumers omitting material information that a reasonable consumer

17    would want to know before entering into same and/or similar financial transactions.

18          146.    Defendants' acts and practices are fraudulent because Defendants had knowledge
19
      of material information that was not known to Plaintiffs and the Class and because Defendants
20
      deceived Plaintiffs and the Class by making partial representations that suppressed material facts.
21
            147.    Defendants' acts and practices constitute fraudulent omissions because
22
      Defendants, having provided partial information, had a duty to further disclose the whole truth.
23
24    Defendants, having made representations regarding their abilities and position had a duty to

25    disclose all material facts within their knowledge regarding the Transaction, which Plaintiffs and

26    other consumers could not ascertain independently.

27

_____

148.    Defendants' acts and practices constitute fraudulent omissions because their marketing materials included omissions of facts that Defendant was obliged to disclose relating to their contractual and business relationships.

149.    Defendants' acts and practices constitute fraudulent omissions because Defendants have exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs and the Class.

150.    Defendants' acts and practices are fraudulent because they induced Plaintiffs and members of the Class to enter into agreements, and expend fees by making misleading representations to Plaintiffs and every Class member that omitted material information regarding their fees, role and capabilities that a reasonable individual would want to know before engaging Defendants or similar service providers.

151.    Defendant's acts and practices have deceived Plaintiffs and the public and will likely continue to deceive the public.

152.    A reasonable consumer would be deceived by Defendants' statements and omissions in a financial transaction of the kind at subject herein, and Plaintiffs and members of the Class have in fact been deceived and would have behaved differently had they known the whole truth.

153.    Had Plaintiffs and the Class known the whole truth, they would not have entered into any arrangement or agreement with anyone or entity affiliated with Defendants.

154.    Plaintiffs and the Class were injured in their money or property because Defendants' fraudulent acts and practices violate the UCL.

155.    The foregoing acts and practices have detrimentally impacted competition and have caused substantial harm to Plaintiffs and the Class.

156.    Plaintiffs and the Class are entitled to, and seek, restitution of their money or property that Defendants acquired by means of their unfair competition.

WHEREFORE Plaintiffs and the Class, respectfully requests this Court to enter judgment on its behalf against Defendants as to this Count VIII for Violations of the UCL relative to certain Fraudulent Business Practices, and award all legal and equitable relief to Plaintiffs which it is entitled to as a matter of law and equity.

**COUNT IX**
**Violation of California's Unfair Competition Law California**
**Business &Professions Code §§ 17200 et seq.**
**Unfair Business Practices**
**-Against All Defendants-**

157.    Plaintiffs hereby adopt each and every allegation in paragraph 1 through 156 as if full re-alleged herein.

158.    Cal. Bus. & Prof. Code § 17200 et seq. prohibits any unlawful, unfair or fraudulent business act or practice. Defendant's acts and practices, as alleged herein, are unfair business acts and practices under the UCL.

159.    Defendants' business practices as alleged herein are unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive and/or unscrupulous. The gravity of Defendant's conduct outweighs any benefit of such conduct.

160.    Defendants' misleading statements that omit material information are unfair business acts and practices under the UCL.

161.    Defendants' acts and practices are unfair because they induced Plaintiffs and members of the Class to enter into certain agreements, including a certain Term Sheet and Fee Agreement, and omitted material information regarding their role and abilities from Plaintiffs

and Class members, which a reasonable individual would want to know before entering or

engaging in a financial transaction of this size and specifications.

162.    A reasonable consumer would be deceived by Defendants' statements and

omissions, and Plaintiffs and members of the Class have in fact been deceived and would have

behaved differently had they known the whole truth.

163.    Had Plaintiffs and the Class known the whole truth -- including that Defendants

were not direct lenders, nor did they have the ability to close this Transaction on the terms they

initially proposed -- Plaintiffs would not have entered any agreement or further engaged

Defendants.

164.    As a result of Defendants' unfair acts and practices that violate the UCL,

Plaintiffs and the Class were injured in their money or property.

165.    The foregoing acts and practices have detrimentally impacted competition and

have caused substantial harm to Plaintiffs and the Class.

166.    Plaintiffs and the Class are entitled to and seek restitution of their money or

property that Defendants acquired by means of their unfair competition.

WHEREFORE Plaintiffs and the Class, respectfully requests this Court to enter judgment on

its behalf against Defendants as to this Count IX for Violations of the UCL relative to certain

Unfair Business Practices, and award all legal and equitable relief to Plaintiffs and the Class

which they are entitled to as a matter of law and equity.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, requests that the

Court to enter judgment on their behalf and on behalf of the Class as follows:

(i)  Certifying the Class, as requested herein, appointing Plaintiffs as the Class

Representatives, and appointing Plaintiffs' counsel as counsel for the Class;

(ii)  Issuing appropriate notice to the Class at Defendants' expense;

(iii) Awarding restitution of Defendants' revenues or profits from its illegal behavior described herein to Plaintiffs and members of the Class;

(iv) Awarding prospective declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and restore to them all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful and to change their business practices.

(v) Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

(vi)  Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

(vii)  For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**EVANS LAW FIRM, INC.**

By:_____
INGRID M. EVANS (State Bar No. 179094)
-and-
**GULKO SCHWED LLP**
ASHER GULKO (*pro hac vice* to be submitted)
44 Wall Street, 2nd Floor
New York, New York 10005
Asher@gulkoschwed.com
Tel: 212-500-1312
*Attorneys for Plaintiffs*